2053

SNYDER'S AUTO WORLD, INC., as successor in interest to Snyder's Pontiac/GMC Trucks, Inc., Respondent v. GEORGE COLEMAN MOTOR COMPANY, INC., Defendant and Third Party Plaintiff v. Wayne H. WHITNER and Kenneth Welcher, individually and as partners d/b/a Carolina Leaseway Auto Sales; Sylvia D. Whitner, Gary Brooks, d/b/a Brooks Body Shop, Gary Brooks, d/b/a Brooks Used Cars, Wayne Whitner and Brian Whitner, individually and as partners d/b/a/ Whitner's Used Cars, and Bill Burns d/b/a State Auto Sales, of whom Wayne H. Whitner, Carolina Leaseway Auto Sales and Whitner's Used Cars are Appellants.

(434 S.E. (2d) 310)

Court of Appeals

*Kenneth E. Sowell*, Greenville, *for appellants.*

*Alexander M. Bullock*, Greenville, *for respondent.*

Heard June 7, 1993.

Decided July 12, 1993.

SHAW, Judge:

Respondent, Snyder's Auto World, Inc., brought this action to recover damages incurred when it repurchased a 1986 Pontiac Fiero from a customer upon discovery that the car had previously been wrecked, salvaged and rebuilt. Wayne H. Whitner, who initially purchased and repaired the salvaged car, appeals from a $6,6000 jury verdict against him for unfair trade practices. We affirm.

The sole issue raised on appeal is whether the trial judge erred in the admission of a document which contained an opinion of an outside appraiser who did not testify at trial.

On June 30, 1988, a 1986 Pontiac Fiero was involved in an accident. Subsequently, State Auto Insurance Company paid its insured $8,050 and sold the car as salvage to Whitner for a purchase price of $1,275. Pursuant to S.C. Code Ann. § 56-19-480 (1991), the insurance company turned title of the car over to the Highway Department and submitted an S-1 form indicating the vehicle was a total loss. Whitner had the car repaired and, as required by the above statute, submitted an affidavit in order to obtain a certificate of title on the rebuilt car. The affidavit indicated the cost of repair of the car was $750.

§ 56-19-480 provides in pertinent part:

> If a vehicle is acquired by an insurance company in settlement of a claim to such vehicle . . . the company or its

agent shall immediately deliver to the Department the certificate of title for cancellation together with a report indicating the type and severity of damage to the vehicle. At such time as the insurance company may thereafter transfer the damaged vehicle, the company or its agent shall notify the Department to whom the transfer was made on a form prescribed by the Department. The vehicle may then be transferred as salvage by use of a form prescribed by the Department.

\* \* \* \* \* \*

A certificate of title for the vehicle may not again be issued except upon submission of an application containing the information required by the Department together with . . . an affidavit from the rebuilder indicating that the total cost of repairing the vehicle including all labor and parts was estimated to be or actually was less than sixty percent of the fair market retail value of the vehicle. . . .

At trial, the court, over objection, allowed the admission of State Auto's entire file concerning the Fiero under S.C. Code Ann. § 19-5-510 (1985), the Uniform Business Records as Evidence Act. The trial judge overruled Whitner's objection to an appraisal estimating the cost of repairs which was contained in the file. He ruled such evidence was allowed to explain why State Auto paid out on the claim and not for the truth of the matter asserted.

Whitner asserts the trial judge erred in allowing the estimate of an outside appraisal company into evidence arguing it was a subjective opinion of an outside witness who was not available at trial for cross-examination. He contends "the repair estimate was the only evidence at trial which indicated that the repair affidavit presented to the highway department was fraudulent" and that he, thus, committed an unfair trade practice. We disagree.

At trial, a State Auto employee, Roberto Inclan, testified that State Auto concluded it should pay the insured the cash value of the vehicle rather than attempt repair and that the figure determined by the appraiser "obviously came up . . . somewhat larger" than the $750 cost appellant claims. He also testified State Auto paid $8,050 to the insured and sold the

salvage for $1,275 from which the company netted $903 after expenses. From this evidence the jury could have reasonably concluded the damage to the car exceeded the value of the automobile such that it was not economically wise to attempt repair and that the insurance company would not have suffered a loss of over $7,000 if it could have repaired the car for only $750.

Further, Deborah Marsh, a senior field claims representative for State Auto, testified the company submitted an S-1 form to the Highway Department which is required on any vehicle that is determined to be a total loss. She confirmed the company paid the insured $8,050 on the claim, the high bid for the salvaged vehicle was $1,275 and the company netted $903 from the sale. She testified that she indicated the car was rebuildable on the S-1 form, but that it was not cost efficient for the company to do so because it felt the damages exceeded the value of the vehicle. Finally, she stated that if the car could have been repaired for $750, the company would have done so. From this testimony, the jury likewise could have concluded repair costs to the automobile were far in excess of the $750 claimed by the appellant.

The burden is on the appellant to show not only error, but also prejudice. *Cartee v. Cartee*, 295 S.C. 103, 366 S.E. (2d) 269 (Ct. App. 1988). The above-cited testimony is ample evidence from which the jury could have concluded the affidavit submitted by Whitner to the Highway Department was false. Accordingly, the error, if any, in admitting the repair estimate into evidence was harmless.

Affirmed.

CURETON and GOOLSBY, JJ., concur.