758 S.E.2d 187

**Gladys SIMS, as the Duly Appointed Guardian and Conservator of Kristy L. Orlowski (a/k/a Kristy Wood), Appellant/Respondent,**

v.

**AMISUB OF SOUTH CAROLINA, INC., d/b/a Piedmont Medical Center, and C. Edward Creagh, M.D., Respondents/Appellants.**

Appellate Case No. 2012-212956.

No. 5197.

Court of Appeals of South Carolina.

Heard Jan. 9, 2014.

Decided Feb. 12, 2014.

Rehearing Denied May 19, 2014.

204

Chad A. McGowan, Ashley W. Creech, and Jordan C. Calloway, all of McGowan, Hood & Felder, LLC, of Rock Hill; and Whitney B. Harrison, of McGowan, Hood & Felder, LLC, of Columbia, for Appellant/Respondent.

Andrew F. Lindemann, of Davidson & Lindemann, P.A., of Columbia; and H. Spencer King, of The Ward Law Firm, P.A., of Spartanburg, for Respondent/Appellant C. Edward Creagh, M.D. William U. Gunn and Joshua T. Thompson, both of Holcombe Bomar, of Spartanburg, for Respondent/Appellant Amisub of South Carolina, Inc., d/b/a Piedmont Medical Center.

LOCKEMY, J.

In this medical malpractice action, Gladys Sims, as the guardian and conservator of Kristy L. Orlowski, (Orlowski) appeals the circuit court's grant of summary judgment, arguing the court erred in estopping Orlowski from pursuing a medical negligence claim against Dr. C. Edward Creagh and Amisub of South Carolina, d/b/a Piedmont Medical Center (the Hospital). Dr. Creagh and the Hospital cross-appeal, arguing the circuit court erred in denying their motions for summary judgment because (1) Orlowski's claim was barred by the statute of limitations, and (2) the tolling provisions of section

15–3–40 of the South Carolina Code (2005) are not applicable. We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

In 2003, Orlowski received prenatal care from Dr. R. Norman Taylor, III, and his practice, Rock Hill Gynecological & Obstetrical Associates, P.A. (RH GYNOB). On September 12, 2003, Orlowski suffered an eclamptic seizure. Following the seizure, she remained at the Hospital from September 12, 2003, until November 24, 2003.

On November 25, 2003, Orlowski was re-admitted to the Hospital by Dr. Creagh, who diagnosed her with a left pleural effusion. She was discharged on November 27, 2003. On November 29, 2003, Orlowski was re-admitted to the Hospital for persistent vomiting. An MRI revealed a hydro-pneumothorax in Orlowski's left lung. Her condition continued to decline, and on December 3, 2003, she suffered a cardiopulmonary arrest. Orlowski was transferred to Carolinas Medical Center where she remained through March 29, 2004.

Orlowski alleges she has been mentally incompetent since September 12, 2003, the date of the eclamptic seizure. On March 5, 2004, Orlowski's husband, Christopher T. Orlowski, was appointed as her guardian and conservator. Orlowski's mother, Gladys Sims, is her current guardian and conservator.

On August 24, 2006, Orlowski, through Sims, filed a medical malpractice action (the Taylor lawsuit) against Dr. Taylor and RH GYNOB. In the Taylor lawsuit, Orlowski alleged that as a direct and proximate result of Dr. Taylor's and RH GYNOB's medical negligence, she "suffered severe, debilitating, and permanent neurological deficits." Specifically, Orlowski claimed Dr. Taylor and RH GYNOB breached their duty of care by negligently failing to: (1) diagnose preeclampsia; (2) refer her to a specialist for further evaluation; and (3) supervise medical personnel and staff in her treatment. Orlowski claimed past, present, and future injuries and damages, including: (1) chronic pain and suffering; (2) substantial medical expenses; (3) disfigurement; (4) mental anguish; (5) loss of enjoyment of life; (6) loss of income and related benefits; (7) need for full time medical and nursing care; (8) permanent restrictions and impairments that make it impractical for her to care for even her most basic of personal needs; and (9)

other damages as may be identified during the course of this litigation.

The Taylor lawsuit was tried in April 2009. During the trial, Orlowski presented expert medical testimony from Drs. Stephen Pliskow and Barry Schifrin, who opined, to a reasonable degree of medical certainty, that Orlowski's medical problems were caused by the September 12, 2003 eclamptic seizure which could have been avoided had Dr. Taylor hospitalized Orlowski on September 11, 2003. Orlowski's experts testified her damages were a direct and proximate result of Dr. Taylor's negligence occurring on or before September 12, 2003. The jury returned a defense verdict in the Taylor lawsuit; however, Orlowski received $300,000 as a result of a high-low settlement agreement.

Orlowski, through Sims, commenced the present action against Dr. Creagh and the Hospital (collectively, the Respondents) on November 24, 2009. Orlowski alleged the medical negligence of the Respondents occurring between November and December 2003 caused her to suffer "severe debilitating injuries which have resulted in her incompetent state due to the hypotensive episode and hypoxic condition which has caused physical suffering, severe physical, cognitive and emotional pain and distress, and has ultimately caused [her] permanent and severely disabled physical and mental state."

Orlowski claimed Dr. Creagh breached his duty of care by negligently failing to: (1) detect her deteriorating condition; (2) diagnose and treat her pulmonary deterioration; (3) diagnose and treat her for acute respiratory distress syndrome (ARDS); (4) transfer her to more qualified physicians; (5) order, review, or evaluate testing during her treatment; and (6) order the correct treatment and medication. Additionally, Orlowski claimed the Hospital breached its duty of care by negligently failing to: (1) ensure she was properly monitored during her stay; (2) have in place proper policies, procedures, and protocols for the management and discharge of patients; (3) notify proper medical personnel during her declining health; (4) diagnose and treat her ARDS, pneumonia, and empyema of her left lung which resulted in her cardiopulmonary arrest and hypoxic injuries; (5) properly train nurses and staff; (6) monitor and respond to her worsening symptoms;

(7) properly and timely notify the appropriate physicians of her deteriorating condition; (8) have appropriate policies and procedures to ensure that patients with conditions similar to hers are treated appropriately; (9) insure that proper diagnostic procedures were conducted; and (10) intervene on her behalf rather than discharging her. Orlowski sought damages against the Respondents for the same injuries and damages claimed in the Taylor lawsuit.

The Respondents filed motions for summary judgment asserting Orlowski's suit was barred by the statute of limitations for medical malpractice actions pursuant to section 15–3–545(A) of the South Carolina Code (2005). They further argued Orlowski's suit was barred by collateral estoppel based upon the adjudication of the Taylor lawsuit. The motions were heard by the circuit court on July 18, 2012. Thereafter, in August 2012, the circuit court granted summary judgment on the estoppel defense but denied summary judgment on the statute of limitations defense. This appeal followed.

## STANDARD OF REVIEW

■ When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). "Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law." *Id.* In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the non-moving party. *Sauner v. Pub. Serv. Auth. of S.C.,* 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." *Sides v. Greenville Hosp. Sys.,* 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct.App.2004).

## LAW/ANALYSIS

### I. Orlowski's Appeal

Orlowski argues the circuit court erred in estopping her from pursuing her medical negligence claims against the Respondents.

## A. Collateral Estoppel

Under South Carolina law, "[c]ollateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue that was decided in a previous action, regardless of whether the claims in the first and subsequent lawsuits are the same." *Carolina Renewal, Inc. v. S.C. Dep't. of Transp.*, 385 S.C. 550, 554, 684 S.E.2d 779, 782 (Ct.App.2009). "The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Id.*

In its order, the circuit court found Orlowski was collaterally estopped from pursuing her negligence claims against the Respondents because her "presentation of evidence on liability and damages in the [Taylor lawsuit] was premised on the assumption that all of [her] injuries, damages, expenses ... were directly and proximately caused by the negligence of Dr. Taylor and [RH GYNOB]." The court found it was "clear that [Orlowski] sought to prove that Dr. Taylor's negligence was entirely responsible for all of [Orlowski]'s injuries and damages." The court noted that at the hearing Orlowski acknowledged that the Respondents could have been joined as parties, yet she "sought to lay all blame for [her] condition and resulting damages upon Dr. Taylor and [RH GYNOB], to the exclusion of ... [the Respondents]."

The circuit court relied on *Graham v. State Farm Fire & Casualty Insurance Co.*, 277 S.C. 389, 287 S.E.2d 495 (1982), in granting the Respondents' summary judgment motions. In *Graham*, the plaintiff's automobile was destroyed by fire while parked in the garage of his residence. 277 S.C. at 390, 287 S.E.2d at 495. The plaintiff first sued his auto insurance company for insurance proceeds. *Id.* The auto insurer defended on the basis that the fire was deliberately set and the jury ruled in favor of the insurer. *Id.* at 390, 287 S.E.2d at 495–96. The plaintiff then brought a subsequent suit under his homeowner's policy for breach of contract. *Id.* at 390, 287 S.E.2d at 496. In that action the circuit court granted summary judgment for the homeowner's insurer and ruled that the insured was collaterally estopped by the prior judgment from bringing the second lawsuit. *Id.* The supreme court

affirmed, finding "[i]t appears from the transcript of record that the appellant has had his day in court." *Id.* at 391, 287 S.E.2d at 496. The court found the sole issue in both actions was the origin of the fire and that issue was adjudicated in the first action. *Id.*

The *Graham* court cited favorably to *Jenkins v. Atlantic Coast Line Railroad Co.*, 89 S.C. 408, 71 S.E. 1010 (1911), in which the plaintiff was injured in a train accident. The plaintiff brought suit against the railroad company which owned the tracks where the accident occurred. 89 S.C. at 408, 71 S.E. at 1011. The case was tried on the merits, and judgment was entered in favor of the railroad company. *Id.* The plaintiff then brought a second suit against another railroad company that owned and operated the train at the time of the accident. *Id.* The supreme court barred the second suit, holding:

> [T]he true ground upon which a former judgment, in a case like this, should be allowed to operate as a bar to a second action is not res judicata, or technical estoppel, because the parties are not the same, and there is no such privity between them as is necessary for the application of that doctrine; but that in such cases, on grounds of public policy, the principle of estoppel should be expanded, so as to embrace within the estoppel of a judgment, persons who are not, strictly speaking, either parties or privies. *It is rested upon the wholesome principle which allows every litigant one opportunity to try his case on the merits, but limits him, in the interest of the public, to one such opportunity.*

*Id.* at 408, 71 S.E. at 1012 (emphasis added).

Here, the circuit court concluded that the "wholesome principle" described in *Graham* and *Jenkins* was equally applicable in the present case. The court ruled Orlowski had "had her day in court" and made the decision to assert that only Dr. Taylor and RH GYNOB had caused all of her injuries and damages. As a result, the court found Orlowski was precluded from arguing the Respondents were liable for the same injuries and damages.

■ On appeal, Orlowski argues her assertion of negligence claims against Dr. Taylor and RH GYNOB does not preclude her from asserting that the Respondents' actions were also

proximate causes of her damages. She contends Dr. Taylor, RH GYNOB, Dr. Creagh, and the Hospital can all be proximate causes of her permanent damages. Orlowski further argues she cannot be collaterally estopped from asserting negligence claims against the Respondents because the issue of their negligence was not actually litigated in the Taylor lawsuit. According to Orlowski, her claims against the Respondents are not an attempt to re-litigate *the* cause of her injuries, but are an attempt to determine whether the treatment she received from the Respondents was *a* cause of her injuries.

The Respondents assert that in the Taylor lawsuit, Orlowski argued she was totally and permanently disabled as a result of negligence attributable solely to Dr. Taylor and RH GYNOB. They maintain Orlowski did not place any blame on the Respondents nor did she argue any medical negligence occurred after she was readmitted to the Hospital on November 25, 2003. The Respondents note the injuries and damages Orlowski asserted in the Taylor lawsuit are the identical injuries and damages she asserts in the present suit. Therefore, they argue, Orlowski is barred by collateral estoppel from re-litigating issues decided in the Taylor lawsuit.

We agree with Orlowski. Orlowski's negligence claims against the Respondents were not "actually litigated" during the Taylor lawsuit. Additionally, we disagree with the Respondents' assertion that Orlowski claimed in the Taylor lawsuit that Dr. Taylor and RH GYNOB were the *only* causes of her injuries and damages. We are mindful that while the alleged negligence of the Respondents was never raised in the Taylor lawsuit, Orlowski's own expert, Dr. Pliskow, testified:

Q: Within a reasonable degree of medical certainty were all of [Orlowski]'s problems; medical problems, were they caused by the eclamptic episode on September 12th?

A: Yes they were.

While this testimony supports a finding that Dr. Taylor was a proximate cause of Orlowski's injuries, it does not foreclose a claim that a different medical provider was also a proximate cause of her injuries. A review of the complaints filed in both suits reveals a distinction between the deviations in the standard of care claimed against Dr. Taylor and RH GYNOB and

those claimed against the Respondents. In the present suit, Orlowski is suing for a separate negligence which she contends contributed to the worsening of her condition. This negligence was not litigated in the Taylor lawsuit.

The Respondents also assert Orlowski could have joined the Respondents as parties to the Taylor lawsuit, but chose only to claim that Dr. Taylor and RH GYNOB were the cause of her injures. In its order, the circuit court noted:

[B]y the time of trial in [Orlowski]'s action against Dr. Taylor in April, 2009, [Orlowski] and her counsel were fully apprised through discovery of the entire extensive medical record in this case, including every aspect of these Defendants['] involvement in [Orlowski]'s treatment and care. This includes every act which [Orlowski] now claims to be negligent treatment and care causing [Orlowski]'s injuries and damages.

We find Orlowski was not required to join the Respondents in the Taylor lawsuit. Pursuant to Rule 20(a), SCRCP, a party may choose to join multiple parties as defendants but joinder is not required. *See* Rule 20(a), SCRCP ("[a]ll persons *may* be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.") (emphasis added).

In sum, the issue in the Taylor lawsuit was whether Dr. Taylor and RH GYNOB caused Orlowski's injuries and damages. The issue in the present suit is whether the Respondents caused Orlowski's injuries and damages. Because these are two different issues, the circuit court erred in finding Orlowski was collaterally estopped from pursuing her claims against the Respondents.

### B. Judicial Estoppel

■ Orlowski asserts it is unclear whether the circuit court applied the doctrine of collateral estoppel or judicial estoppel in granting summary judgment. Therefore, she addresses both doctrines in her brief. Although the circuit court discussed the principles of both collateral and judicial estoppel

during the summary judgment motions hearing, the court only addressed collateral estoppel in its order. The Respondents argue that whether or not judicial estoppel was the basis for the circuit court's ruling, it is also an additional sustaining ground for the grant of summary judgment. Therefore, we address it below.

■■■ "Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding." *Cothran v. Brown,* 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004). In *Cothran,* our supreme court held that the following elements are necessary for the doctrine of judicial estoppel to apply:

(1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent.

357 S.C. at 215–16, 592 S.E.2d at 632.

We find Orlowski asserted inconsistent claims in the Taylor lawsuit and the present suit against the Respondents. In the Taylor lawsuit, Orlowski claimed Dr. Taylor and RH GYNOB caused her injuries and damages; however, in the present suit, she claims the Respondents caused her injuries and damages. While the positions asserted by Orlowski are inconsistent, there is no evidence they were intentionally asserted to mislead the court. Accordingly, Orlowski's claims against the Respondents are not barred by judicial estoppel.

## C. Additional Sustaining Ground

As an additional sustaining ground, the Respondents argue Orlowski's medical malpractice claims are barred pursuant to the three-year statute of limitations for medical malpractice actions contained in section 15–3–545 of the South Carolina Code (2005). Additionally, they contend disability tolling for

"insane" persons under section 15-3-40 of the South Carolina Code (2005) does not apply to medical malpractice claims.

## 1. Appealability and Preservation

In *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000), our supreme court discussed the law governing additional sustaining grounds. The court explained that "in raising an additional sustaining ground in an appeal, the party who prevailed in the lower court urges an appellate court to affirm the lower court's ruling for a reason other than one primarily relied upon by the lower court." *Id.* at 417, 526 S.E.2d at 722.

■ Orlowski argues the Respondents are asking this court to deviate from precedent refusing consideration of denied summary judgment motions by claiming that their statute of limitations argument represents an additional sustaining ground. Orlowski contends the Respondents are precluded from raising additional sustaining grounds because they did not prevail in the circuit court on the statute of limitations issue. We disagree.

■ The Respondents raised two grounds for summary judgment: (1) estoppel and (2) expiration of the statute of limitations. The circuit court granted summary judgment as to estoppel, and therefore, the Respondents prevailed in the lower court. Although the circuit court denied the statute of limitations defense, the Respondents are not precluded from raising this defense as an additional sustaining ground. We note "[t]he appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the record." Rule 220(c), SCACR. Further, "the denial of summary judgment does not *finally* determine anything about the merits of the case and does not have the effect of striking any defense since that defense may be raised again later in the proceedings." *Ballenger v. Bowen*, 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) (emphasis in original).

■ Orlowski also contends the Respondents' statute of limitations argument is not preserved for review because their arguments on appeal are different than those argued to the circuit court. We disagree. A respondent "may raise on appeal any additional reasons the appellate court should affirm

the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court." *I'On*, 338 S.C. at 419, 526 S.E.2d at 723. Thus, this court can, at our discretion, review the Respondents' statute of limitations argument, and if we find it is proper and fair to do so, rely on it to affirm the lower court's judgment. *See id.*

## 2. Statute of Limitations

Orlowski alleges the injuries and damages she suffered as a result of the medical negligence of the Respondents occurred in November 2003. She commenced the present action against the Respondents in November 2009.

Section 15–3–545(A) establishes the statute of limitations for medical malpractice actions. Specifically, section 15–3–545(A) provides that a medical malpractice action

must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence, *or as tolled by this section.*

S.C.Code Ann. § 15–3–545(A) (2005) (emphasis added). The only tolling provision in section 15–3–545 is found in subsection D, which provides limited tolling applicable only to minors. *See* S.C.Code Ann. § 15–3–545(D) (2005).

Orlowski asserts that although she did not file suit against the Respondents until six years after the alleged negligent treatment, she is excused from the three-year statute of limitations because she has been mentally incompetent since September 2003. Specifically, Orlowski maintains section 15–3–40 applies to extend her limitations period from three to eight years because she qualifies as an "insane" person. Section 15–3–40 provides:

If a person entitled to bring an action . . . under Chapter 78 of this title . . . is at the time the cause of action accrued either:

(1) within the age of eighteen years; or

(2) insane;

the time of the disability is not a part of the time limited for the commencement of the action, except that the period

within which the action must be brought cannot be extended:

(a) more than five years by any such disability, except infancy; nor

(b) in any case longer than one year after the disability ceases.

S.C.Code Ann. § 15–3–40 (2005).

■ The Respondents argue Orlowski's action is barred by application of the statute of limitations provided in section 15–3–545(A) because section 15–3–40 is inapplicable to toll the limitations period on her claims. We agree with the Respondents.

In *Langley v. Pierce*, 313 S.C. 401, 403, 438 S.E.2d 242, 243 (1993), our supreme court held

[s]ubsection (D) of 15–3–545 provides a limited tolling provision, applicable only to minors. Inclusion of the phrase *'or as tolled by this section'* in subsection (A) clearly indicates that the *only* tolling of [section] 15–3–545(A) intended by the legislature is that contained in subsection (D).

Thus, the supreme court held tolling for minors was the only tolling of the medical malpractice statute of limitations. Consequently, because Orlowski filed her medical negligence action against the Respondents more than three years after the alleged negligence, the present suit is barred by the statute of limitations. We further note Orlowski was aware of the Respondents' alleged negligence when she filed suit against Dr. Taylor in August 2006. However, she did not file suit against the Respondents until November 2009. Thus, even if the commencement date of the statute of limitations was August 2006, Orlowski still failed to file suit within the statute of limitations. Additionally, if section 15–3–40 did apply to medical malpractice actions it would be in conflict with the six-year statute of repose set forth in section 15–3–545(A).

As an alternative ground, the Respondents assert that assuming section 15–3–40 applied, Orlowski's disability ended, and the three-year statute of limitations commenced, in March 2004 when a conservator was appointed. Thus, Orlowski was required to file suit before March 2007, which she failed to do.

While the Respondents cite persuasive authority from Georgia, North Carolina, and New Hampshire supporting their position that the appointment of a conservator affects the viability of a person's insanity for tolling purposes, we need not address this issue as *Langley* is controlling in this case. We also note we are hesitant to adopt a rule that has not previously been adopted by our courts.

## II. The Respondents' Appeal

The Respondents argue the circuit court erred in denying their motions for summary judgment because Orlowski's negligence claim was barred by the statute of limitations and the tolling provisions of section 15-3-40 are not applicable. According to the Respondents, they filed cross-appeals in order to preserve the statute of limitations issue for consideration by this court as an additional sustaining ground. Dr. Creagh notes in his brief that he "fully recognizes and accepts that an order denying summary judgment is not ordinarily appealable." However, he states he "has presented this additional sustaining ground by way of a cross-appeal out of an abundance of caution."

■ We decline to address the Respondents' statute of limitations arguments as cross-appeals because orders denying summary judgment are not appealable. *See Olson v. Faculty House of Carolina, Inc.,* 354 S.C. 161, 168, 580 S.E.2d 440, 444 (2003) ("[T]he denial of a motion for summary judgment is not appealable, even after final judgment."). As stated previously, these issues are also raised as additional sustaining grounds in Orlowski's appeal and are addressed above.

## CONCLUSION

The circuit court erred in finding Orlowski was collaterally estopped from filing the present suit against the Respondents. However, we affirm the circuit court's grant of summary judgment based upon the expiration of the statute of limitations.

**AFFIRMED AS MODIFIED.**

HUFF and GEATHERS, JJ., concur.