**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Earl Dukes, Appellant,

v.

Kennith W. Farrell, Mary C. Farrell and Martin Bogdonovitch, Defendants,

Of whom Kennith W. Farrell and Mary C. Farrell are the Respondents.

Appellate Case No. 2014-000730

———————

Appeal From York County
S. Jackson Kimball, III, Special Circuit Court Judge

———————

Unpublished Opinion No. 2017-UP-155
Heard September 8, 2016 – Filed April 12, 2017

———————

**AFFIRMED AS MODIFIED AND REMANDED**

———————

J. Cameron Halford, of Halford, Niemiec & Freeman, LLP, of Fort Mill, for Appellant.

John Martin Foster, of Rock Hill, for Respondents.

———————

**PER CURIAM:** In this trespass action, Appellant Earl Dukes seeks review of the circuit court's order granting partial summary judgment to Respondents, Kennith

W. Farrell and Mary C. Farrell (the Farrells). Dukes argues the circuit court erred in granting summary judgment to the Farrells on their two alternative counterclaims seeking a declaration that they had either an appurtenant easement or a prescriptive easement over Dukes' property. Dukes also argues the circuit court erred in stating the Farrells owned the pier and dock crossing Dukes' land. We affirm as modified and remand.

## I.      Appurtenant Easement

Dukes first argues the language of the 1965 deed to the Farrells' predecessor in title did not create an express easement appurtenant because (1) the language is ambiguous and (2) the dominant estate and the servient estate were owned by the same persons. We disagree.

"The character of an express easement is determined by the nature of the right and *the intention of the parties creating it*." *Proctor v. Steedley*, 398 S.C. 561, 572, 730 S.E.2d 357, 363 (Ct. App. 2012) (quoting *Windham v. Riddle*, 381 S.C. 192, 201, 672 S.E.2d 578, 583 (2009)). While "[a]n easement in gross is a mere personal privilege to use the land of another" and "is incapable of transfer," an appurtenant easement "passes with the dominant estate upon conveyance." *Id.* (quoting *Windham*, 381 S.C. at 201, 672 S.E.2d at 583). An appurtenant easement "inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof." *Id.* (emphasis omitted) (quoting *Windham*, 381 S.C. at 201, 672 S.E.2d at 583).

To determine the grantor's intention, we must construe it in accordance with the rules applied to deeds and other written instruments. *K & A Acquisition Grp., LLC v. Island Pointe, LLC*, 383 S.C. 563, 581, 682 S.E.2d 252, 262 (2009). "In determining the grantor's intent, [a] deed must be construed as a whole and effect given to every part if it can be done consistently with the law." *Windham*, 381 S.C. at 201, 672 S.E.2d at 583 (quoting *Gardner v. Mozingo*, 293 S.C. 23, 25, 358 S.E.2d 390, 391–92 (1987)). "The intention of the grantor must be found within the four corners of the deed." *Id.* (quoting *Gardner*, 293 S.C. at 25, 358 S.E.2d at 392). This is a question of law for the court as long as the deed is clear and unambiguous. *Hunt v. S.C. Forestry Comm'n*, 358 S.C. 564, 568, 595 S.E.2d 846, 848 (Ct. App. 2004).

Likewise, the determination of whether language in a deed is ambiguous is a question of law. *Cf. S.C. Dep't of Natural Res. v. Town of McClellanville*, 345 S.C.

617, 623, 550 S.E.2d 299, 302–03 (2001) (applying rules of contract construction to a restrictive covenant in a deed). The language in a deed is ambiguous if it is "reasonably susceptible of more than one interpretation." *Id.* at 623, 550 S.E.2d at 302 (defining ambiguity in a contract). "Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties." *Id.* at 623, 550 S.E.2d at 303. "The determination of the parties' intent is then a question of fact." *Id.*

Here, the pertinent language in the 1965 deed from A.F. Fewell and Edward Fewell, Jr. (the Fewells) to W.A. Bigham, the Farrells' predecessor in title, states,

> It being understood that the Grantee herein, [h]is Heirs and Assigns, shall have access to the Backwater in the cove on which the above described property is located, subject to [the] rights of the Wateree Power Company, or its Successors, and other Grantees from the Grantors herein, A. F. Fewell and Edward Fewell, Jr.

This clear and unambiguous language grants "access to the Backwater in the cove" to not only W.A. Bigham but also "[h]is Heirs and Assigns." "Generally, the phrase 'heirs and assigns' will not convert an easement in gross to an appurtenant easement when the elements of an appurtenant easement are not otherwise present. However, such language is *relevant* to the determination of the grantor's intent." *Proctor*, 398 S.C. at 574, 730 S.E.2d at 364 (emphasis added) (citations omitted). Therefore, we cannot ignore this language in determining the grantor's intent.

On the other hand, Dukes asserts that the easement language is ambiguous because it identifies neither Dukes' tract as the servient estate nor a terminus on the dominant estate.[1] However, the 1965 deed's language "access to the Backwater in the cove" necessarily implies (1) all the land that was beneath the cove's water in 1965, currently owned by Dukes, is the servient estate and (2) a terminus lies on the dominant estate. *See Hill v. Carolina Power & Light Co.*, 204 S.C. 83, 96, 28

---

[1] In his reply brief, Dukes argues the 1965 deed's recognition of the Wateree Power Company's right to raise or lower the water level illustrates "the inability to articulate a terminus capable of transfer through conveyance." Dukes did not raise this precise argument in his main brief. Therefore, it is not preserved for review. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 692 (Ct. App. 2001) ("[A]n argument made in a reply brief cannot present an issue to the appellate court if it was not addressed in the initial brief.").

S.E.2d 545, 549 (1943) ("The unrestricted grant of an easement conveys all such rights as are incident or necessary to its reasonable and proper enjoyment."). This language is not "reasonably susceptible" of any other interpretation.[2] The fact that some of the servient estate is not currently covered by water does not affect its status as the servient estate or the location of the terminus. If the terminus did not lie on the dominant estate, the grantor's inclusion of language allowing the dominant estate's new owner access to the cove's water would be rendered a nullity, thus violating the mandate that a "deed must be construed as a whole and *effect given to every part* if it can be done consistently with the law." *Windham*, 381 S.C. at 201, 672 S.E.2d at 583 (emphasis added) (quoting *Gardner*, 293 S.C. at 25, 358 S.E.2d at 391–92).

Dukes also argues the 1965 deed's language could not have created an appurtenant easement because at the time of the conveyance, the dominant and servient estates were owned by the same persons, i.e., the Fewells. In support of his argument, Dukes cites *Windham v. Riddle*, which references the rule that an easement cannot exist when both the purported servient and dominant estates are owned by the same person. 381 S.C. at 198, 202, 672 S.E.2d at 581, 583. The present case does not fall within this rule because the Fewells' very act of conveying the dominant estate to W.A. Bigham, the Farrells' predecessor in title, divested the Fewells of their ownership of this property. *See Haselden v. Schein*, 167 S.C. 534, 539, 166 S.E. 634, 636 (1932) ("[I]n order to effectuate the extinguishment of an easement by unity of title, the fee to the dominant and servient tenements must be vested in the same person *at the same time*." (emphasis added)).

Based on the foregoing, we find no merit to Dukes' two grounds for challenging the circuit court's declaration that the Farrells have an appurtenant easement over Dukes' property. *See Snyder's Auto World, Inc. v. George Coleman Motor Co.*, 315 S.C. 183, 186, 434 S.E.2d 310, 312 (Ct. App. 1993) (stating the appellant has the burden of showing error). Therefore, we affirm this declaration.

## II.    Prescriptive Easement

Although we need not reach Dukes' arguments concerning the Farrells' counterclaim asserting a prescriptive easement, we do so in the interest of judicial

---

[2] *McClellanville*, 345 S.C. at 623, 550 S.E.2d at 302 (stating the language in a contract is ambiguous "when the terms of the contract are reasonably susceptible of more than one interpretation").

economy. *See Jeter v. S.C. Dep't of Transp.*, 369 S.C. 433, 441 n.6, 633 S.E.2d 143, 147 n.6 (2006) (citing *S. Bell Tel. & Tel. Co. v. Hamm*, 306 S.C. 70, 75, 409 S.E.2d 775, 778 (1991)) (addressing an issue in the interest of judicial economy); *State v. Vick*, 384 S.C. 189, 203, 682 S.E.2d 275, 282 (Ct. App. 2009) (same).

"To establish a prescriptive easement, the claimant must prove by clear and convincing evidence: '(1) the continued and uninterrupted use or enjoyment of the right for a period of [twenty] years; (2) the identity of the thing enjoyed; and (3) the use [was] adverse under claim of right.'" *Simmons v. Berkeley Elec. Coop., Inc.*, Op. No. 27674 (S.C. Sup. Ct. filed Nov. 2, 2016) (Shearouse Adv. Sh. No. 42 at 12, 15) (quoting *Darlington Cty. v. Perkins*, 269 S.C. 572, 576, 239 S.E.2d 69, 71 (1977)). In *Simmons*, our supreme court clarified the third element of a prescriptive easement by stating, "[A]dverse use and claim of right cannot exist as separate methods of proving the third element of a prescriptive easement as the two terms are, in effect, one and the same." *Id.* at 19.

The court further stated, "[W]hen it appears that [the] claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of [twenty] years, the use will be presumed to have been adverse." *Id.* at 15–16 (first alteration in original) (quoting *Williamson v. Abbott*, 107 S.C. 397, 400, 93 S.E. 15, 16 (1917)). "However, because the 'continuous' and 'uninterrupted' elements for adverse use are already required to establish a prescriptive easement, the subtest for 'adverse use' only further requires the claimant's use be "open" and 'notorious.'" *Id.* at 19. The court then set forth the following "simplified" test for a prescriptive easement:

> In order to establish a prescriptive easement, the claimant must identify the thing enjoyed, and show his use has been open, notorious, continuous, uninterrupted, and contrary to the true property owner's rights for a period of twenty years.

*Id.*

Here, the circuit court stated in its order,

> Because I find and conclude that there is an express easement, it is not necessary to rule on the [Farrells'] claim of an easement by prescription. However, if it is determined that there is not an express easement

appurtenant, I find and conclude in the alternative that the [Farrells] have . . . acquired an easement by prescription over [Dukes'] property for access to the waters of [the cove]. They are therefore entitled to summary judgment as [to] that issue in so far as it relates to access to [the cove], and the same is granted in the alternative.

We now address the elements of a prescriptive easement as applied to this case.

## A.    Continuity

Dukes asserts the Farrells failed to show the requisite continuity in the twenty-year period required for a prescriptive easement. He argues the period during which the pier was rendered unusable when rammed by a row boat broke the continuity in the use of the pier and dock. We disagree.

Continuity "does not necessarily require daily, weekly, or even monthly use" but merely "requires more than occasional or sporadic use of the easement." 25 Am. Jur. 2d *Easements and Licenses* § 51 (2014). Moreover,

a party may "tack" the period of use of prior owners in order to satisfy the twenty-year element of the prescriptive easement theory. However, the use by the previous owners must also satisfy all of the elements of a prescriptive easement. 25 Am. Jur. 2d *Easements & Licenses* § 63 (2004 & Supp. 2012); *see also Babb v. Harrison*, 220 S.C. 20, 23, 66 S.E.2d 457, 458 (1951) (holding that the claimant carries the burden of proving that the use of the disputed area was adverse for the full period of twenty years in order to establish an easement by prescription).

*Paine Gayle Properties, LLC v. CSX Transp., Inc.*, 400 S.C. 568, 584–85, 735 S.E.2d 528, 537 (Ct. App. 2012) (footnote omitted).

Here, the Farrells presented the affidavits of Dennis Edwards and Kennith Farrell showing the Farrells and their predecessors in title used the pier and dock crossing Dukes' property for over twenty years. Dukes presented the affidavit of

the contractor who rebuilt the pier after it was damaged by a row boat in late May 2006 to support his contention that the use of the pier and dock was interrupted by the period of time it took to rebuild the pier. The contractor's affidavit indicates the pier was rebuilt before the end of June 2006, and Kennith Farrell's affidavit indicates the pier and dock were "in continuous use" since the pier was rebuilt. The few weeks between May and June 2006 cannot defeat the continuity of the twenty-year period of use because the use need only be of a reasonable frequency. *See* 25 Am. Jur. 2d *Easements and Licenses* § 51 (stating that continuity "does not necessarily require daily, weekly, or even monthly use" but merely "requires more than occasional or sporadic use of the easement").

In any event, the twenty-year prescriptive period had already been established when the pier was damaged in 2006. The Farrells' immediate predecessors in title, the Edwards, began using the pier and dock crossing Dukes' property on February 2, 1976, until Robert Edwards sold the property to the Farrells on August 12, 2005. During this time, the Edwards replaced the pier that was in place in 1976 with a wider pier and dock due to Nancy Edwards' blindness. The Edwards were required to obtain approval from Duke Power for these changes due to complaints from a neighboring property owner. Robert Edwards later replaced the wider dock with a more narrow dock.

Upon purchasing the Edwards' property on August 12, 2005, the Farrells continuously used the pier and dock until the pier was damaged on Memorial Day in late May 2006.[3] At this point, the combined periods of the Edwards' continuous use and the Farrells' continuous use was thirty years and three months.

## B.     Identity of the Thing Enjoyed

Dukes contends the circuit court erred in concluding the Farrells had a prescriptive easement over Dukes' property due to the court's misconstruction of "the identity of the thing enjoyed." We disagree.

Dukes argues the circuit court interpreted "the identity of the thing enjoyed," which Dukes asserts is "water access," as "constituting [Dukes'] tract and the

---

[3] While the Farrells took title to their property in August 2005, they did not move into the residence on the property until sometime in 2006. Nonetheless, Kennith Farrell testified he used Dukes' property to access the water as soon as he and his wife purchased their property.

dock."  We do not interpret the circuit court's order in this manner.  As to the Farrells' claim for a prescriptive easement, the circuit court stated,

> [I]f it is determined that there is not an express easement appurtenant, I find and conclude in the alternative that the [Farrells] have established the necessary elements to find and conclude that they have acquired an easement by prescription over [Dukes'] property for *access to the waters of* [*the cove*].  They are therefore entitled to summary judgment as [to] that issue in so far as it relates to *access to* [*the cove*], and the same is granted in the alternative.

(emphases added).  Based on this language, the circuit court's order clearly identifies "access to the waters of [the cove]" as the "thing enjoyed."  While counsel for the Farrells stated at the first summary judgment hearing, "The identity of the thing enjoyed was the dock," this statement was obviously not adopted by the circuit court in its order.

### C.    Adverse Use

Dukes argues the evidence does not show that the use of Dukes' property to access the water was adverse for twenty years.  We disagree.

As previously stated, "[w]hen it appears that [the] claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of [twenty] years, the use will be presumed to have been adverse."  *Simmons*, Shearouse Adv. Sh. No. 42 at 15–16 (quoting *Williamson*, 107 S.C. at 400, 93 S.E. at 16).  "However, because the 'continuous' and 'uninterrupted' elements for adverse use are already required to establish a prescriptive easement, the subtest for 'adverse use' only further requires the claimant's use be "open" and 'notorious.'"  *Id.* at 19.

"'Open' generally means that the use is not made in secret or stealthily.  It may also mean that it is visible or apparent."  *Id.* (quoting Restatement (Third) of Property (Servitudes) § 2.17(h) (2000)).  "'Notorious' generally means that the use is actually known to the owner, or is widely known in the neighborhood."  *Id.* at 20 (quoting Restatement (Third) of Property (Servitudes) § 2.17(h)).

Here, Dennis Edwards testified that his father, Robert Edwards, treated the dock as belonging to him and his wife.  Further, the evidence showing the Farrells' and the Edwards' use of the pier and dock was continuous (*See supra* Section II.A.) also shows that their use was open and notorious.  The Edwards obtained Duke Power's permission to replace the pier and dock that were in place in 1976 with a wider pier and dock, and Robert Edwards later replaced the wider dock with a more narrow dock.  Moreover, after the Farrells purchased the dominant estate, Dukes knew they were using the pier and dock, as evidenced by his conversation with the Farrells on Memorial Day 2006.  According to Kennith Farrell, Dukes and his wife were aware of the row boat colliding with the pier and wanted to know "if the kids were okay."

Notably, Dukes did not present any conflicting evidence on this point.  *See Sims v. Amisub of S.C., Inc.*, 408 S.C. 202, 208, 758 S.E.2d 187, 190–91 (Ct. App. 2014) (setting forth the standard for summary judgment and stating, "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial" (quoting *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct. App. 2004))), *aff'd*, 414 S.C. 109, 777 S.E.2d 379 (2015).  Therefore, the evidence shows adverse use.  *See Simmons*, Shearouse Adv. Sh. No. 42 at 19 ("[B]ecause the 'continuous' and 'uninterrupted' elements for adverse use are already required to establish a prescriptive easement, the subtest for 'adverse use' only further requires the claimant's use be 'open' and 'notorious.'").

Based on the foregoing, we find no merit to Dukes' grounds for challenging the circuit court's alternative declaration that the Farrells had a prescriptive easement over Dukes' property.  Therefore, we affirm this declaration.

### III.    Scope of Easement

In addition to seeking a declaration that the Farrells had either an appurtenant easement or a prescriptive easement, each of the Farrells' two counterclaims also sought a declaration concerning the extent of their rights in these respective easements.  In denying summary judgment on this question, the circuit court stated,

> The [Farrells] also argue that they are entitled to summary judgment as to their Third, Alternative Defense and Counterclaim, which deals more specifically with the existing dock and pier, which is located upon the

property of [Dukes]. As to this issue, I find and conclude that there are genuine issues of fact for trial concerning the extent and usage of the [Farrells'] easement. For this reason, summary judgment as to the Third, Alternative Defense and Counterclaim is denied.

To clear up any confusion over these statements, we note the Farrells' "Third, Alternative Defense and Counterclaim," sought not only a declaration concerning the extent of their easement but also a declaration concerning the existence of the prescriptive easement. It is obvious from the circuit court's declaration that a prescriptive easement did, in fact, exist that the circuit court did not intend to deny summary judgment on the entire third defense and counterclaim. Accordingly, we modify this part of the circuit court's order to reflect that summary judgment was denied as to only those parts of the second and third defenses and counterclaims that sought a declaration concerning the extent of the Farrells' easement.

We also note that the circuit court appropriately separated the question of the extent of the easement from the question of its existence. *Cf. Hardy v. Aiken*, 369 S.C. 160, 165, 631 S.E.2d 539, 541 (2006) ("The determination of the existence of an easement is a question of fact in a law action . . . . However, the determination of the scope of the easement is a question in equity." (citation omitted) (quoting *Slear v. Hanna*, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998))); *Smith v. Comm'rs of Pub. Works of the City of Charleston*, 312 S.C. 460, 465, 441 S.E.2d 331, 334 (Ct. App. 1994) ("While we agree with the Smiths that the pleadings and evidence in this case present the primary issue of whether or not the agreement creates an easement in favor of the Smiths, they also present the question of the extent or scope of the easement. '[T]he determination of the *existence* of an easement is a question of fact in a law action' . . . . However, the determination of the extent of a grant of an easement is an action in equity." (first alteration in original) (citation omitted) (quoting *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987))).

The extent of an easement interest is determined by the purpose served by the easement. The scope of an easement refers to the extent or boundaries of that specific limited purpose [that] benefits the dominant estate and burdens the servient estate. Easements may be limited not only as to physical scope but also as to purpose.

25 Am. Jur. 2d *Easements and Licenses* § 60 (2014) (footnotes omitted). Further, the scope of an express easement "is defined by the terms of the instrument creating it." *Id.* § 61 (footnote omitted). "Thus, an easement privileges a party to use another's land only to the extent expressly allowed by the easement . . . ." *Id.* (footnote omitted).

As to prescriptive easements, "judicial delineation of the extent of an easement by prescription should be undertaken with great caution," and "[t]he entire history of the claimant's usage of the way over which an easement is sought must be evaluated to determine the character and scope of the prescriptive easement." *Id.* § 66. "A determination of the scope of a prescriptive easement should focus on what a landowner in the position of the owner of the servient estate should reasonably have expected to lose by failing to interrupt the adverse use before the prescriptive period had run." *Id.*

Because the circuit court denied summary judgment as to the scope of the Farrells' easement, we remand this issue to the circuit court for a trial on the merits. In the interest of judicial economy, the circuit court should allow the parties to present evidence relevant to the scope of both the appurtenant easement and the prescriptive easement.

## IV.    Ownership of Pier and Dock

We affirm the circuit court's reference to the Farrells' ownership of the pier and dock pursuant to Rule 220(b), SCACR, and the following authority: *Sims*, 408 S.C. at 208, 758 S.E.2d at 190–91 ("Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." (quoting *Sides*, 362 S.C. at 255, 607 S.E.2d at 364)), *aff'd*, 414 S.C. 109, 777 S.E.2d 379 (2015).

**AFFIRMED AS MODIFIED and REMANDED.**

**WILLIAMS, THOMAS, and GEATHERS, JJ., concur.**