# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Gladys Sims, as the Duly Appointed Guardian and
Conservator of Kristy L. Orlowski (a/k/a Kristy Wood),
Petitioner,

v.

Amisub of South Carolina, Inc., d/b/a Piedmont Medical
Center; and, C. Edward Creagh, M.D., Respondents.

Appellate Case No. 2014-001179

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from York County
S. Jackson Kimball, III, Special Circuit Court Judge

---

Opinion No. 27561
Heard June 2, 2015 – Filed August 12, 2015

---

## AFFIRMED

---

Chad A. McGowan, Ashley W. Creech and Jordan C.
Calloway, all of Rock Hill, and Whitney B. Harrison, of
Columbia, all of McGowan Hood & Felder, LLC, for
Petitioner.

Andrew F. Lindemann, of Davidson & Lindemann, P.A.,
of Columbia, and H. Spencer King, of The Ward Law
Firm, P.A., of Spartanburg, William U. Gunn and Joshua

T. Thompson, both of Holcombe Bomar, P.A. of Spartanburg, all for Respondents.

---

**JUSTICE KITTREDGE:**  We granted a writ of certiorari to review the court of appeals' decision in *Sims v. Amisub of South Carolina, Inc.*, 408 S.C. 202, 758 S.E.2d 187 (Ct. App. 2014), in which the court of appeals affirmed as modified the dismissal of this action, which is the second medical malpractice case filed by a conservator on behalf of Kristi L. Orlowski relating to medical care she received in the fall of 2003.  The first medical malpractice action was filed in August 2006 against a different physician.  When the trial of that action resulted in a defense verdict, Petitioner Gladys Sims filed the current action on Orlowski's behalf seeking the same damages against different defendants—this time against Respondents, Dr. Edward Creagh and Amisub of South Carolina, Inc., d/b/a Piedmont Medical Center ("Piedmont").

Respondents moved for summary judgment, asserting Petitioner's claim was barred by the statute of limitations.  Petitioner contended her suit was timely filed because the three-year medical malpractice statute of limitations in section 15-3-545 of the South Carolina Code is subject to the tolling provision for insanity in section 15-3-40.  The trial court granted summary judgment in favor of Respondents.  As noted, the court of appeals affirmed as modified.  We find the court of appeals properly construed section 15-3-545 in rejecting Petitioner's reliance on section 15-3-40 in arguing for an eight-year statute of limitations.  We affirm.

## I.

On September 12, 2003, Kristy L. Orlowski, who was twenty-two years old and thirty-six weeks pregnant, was found unresponsive in her home by a family member.  Less than twenty-four hours earlier, Orlowski had been seen by her prenatal care physician, Dr. Norman Taylor, to whom she complained of headaches, dizziness, nausea, and swelling of her hands and feet, all of which are symptoms of pre-eclampsia, a serious, potentially life-threatening complication of pregnancy.[1]  Despite Orlowski's reported symptoms, Dr. Taylor failed to diagnose Orlowski's pre-eclampsia and sent her home from her doctor's visit without any special instructions or warnings.

---

[1] Left untreated, pre-eclampsia can develop into eclampsia, which can result in placental abruption, stroke, and seizures.  The only cure for pre-eclampsia is delivery of the baby.

Upon being discovered in an unresponsive state the following morning, Orlowski was rushed to Piedmont, where she underwent an emergency cesarean section and was later diagnosed as having suffered a seizure caused by eclampsia.[2] Orlowski remained hospitalized continuously from September 12, 2003, through November 24, 2003. During that period, she suffered extreme respiratory distress (including a collapsed lung), was placed on a ventilator, and endured multiple surgeries, including the surgical placement of breathing tubes in her neck. As a result of being intubated for a lengthy period of time, Orlowski also developed aspiration pneumonia and a MRSA infection in her chest cavity.

After two-and-a-half months in the hospital, Orlowski was discharged from Piedmont on November 24, 2003, but was readmitted the following day by Respondent Dr. Edward Creagh. Dr. Creagh, a board-certified pulmonologist, diagnosed and treated Orlowski for a buildup of fluid around her lungs, prescribed an oral antibiotic, and discharged her on November 27, 2003.

Two days later, on November 29, 2003, Orlowski was once again admitted to the hospital with persistent vomiting; her pulmonary condition had worsened and the fluid around her lungs had become infected. Thereafter, Orlowski remained hospitalized through December 8, 2003, when she experienced cardiopulmonary arrest. Orlowski was resuscitated, but she suffered permanent and severe brain damage, which prevents her from caring for herself or managing her own affairs. She requires around-the-clock care.

In March 2004, the probate court appointed a conservator for Orlowski.[3] Orlowski's conservator is the Petitioner in this appeal. In August 2006, Orlowski, through her conservator, filed her first medical malpractice lawsuit, naming Dr. Taylor and his medical practice as defendants. Orlowski alleged her severe and permanent neurological deficits were caused by Dr. Taylor's negligent failure to diagnose and treat her pre-eclampsia prior to her seizure on September 12, 2003.

---

[2] As a result of the eclamptic seizure, Orlowski's baby Breanna suffered prolonged oxygen deprivation, which caused severe health complications that eventually led to her death on March 21, 2006.

[3] *See* S.C. Code Ann. § 62-5-424(B)(17) (2009) (providing that a conservator "may act without court authorization or confirmation, to . . . prosecute or defend actions, claims, or proceedings in any jurisdiction for the protection of estate assets and of the conservator in the performance of his duties").

Specifically, Orlowski presented expert testimony that, within a reasonable degree of medical certainty, *all* of her medical problems were caused by the eclamptic seizure that occurred on September 12, 2003. Plaintiff's medical expert witness at trial testified as follows:

> Q: Within a reasonable degree of medical certainty were all of [Orlowski's] problems; medical problems, were they caused by the eclamptic episode on September 12th?
>
> A: Yes they were. . . . [H]er readmission to Piedmont [Medical Center], her subsequent cardiac arrest during that admission and then her transfer to CMC the Carolina's Medical Center [in Charlotte] was all related back to her eclamptic seizure.

Orlowski's first medical malpractice suit was tried in April 2009 and resulted in a defense verdict.[4] Thereafter, on November 24, 2009, Orlowski, again through her conservator, filed the present medical malpractice action against Respondents Dr. Creagh and Piedmont, alleging Respondents committed medical negligence and were responsible for her injuries. Orlowski sought damages against Respondents for the same injuries and damages she asserted in her previous medical malpractice lawsuit.

Respondents denied negligence and filed a motion for summary judgment. Respondents argued that Orlowski's claims were barred by the statute of limitations and that Orlowski should be estopped from seeking to recover damages from Respondents after contending in her first lawsuit that, to a reasonable degree of medical certainty, *all* of her injuries were solely attributable to the eclamptic seizure episode on September 12, 2003, which resulted from Dr. Taylor's negligent failure to diagnose and treat her pre-eclampsia.

During the summary judgment hearing, Orlowski denied that her claims were barred by the three-year statute of limitations, contending that section 15-3-40, which provides certain exceptions to statutes of limitations, gives an "insane" plaintiff a total of eight years from accrual of the claim to commence a lawsuit despite the six-year statute of repose in section 15-3-545. Orlowski further contended that her claims in the second lawsuit should not be estopped because she alleged Dr. Creagh and Piedmont had committed separate negligent acts from

---

[4]  As a result of a high-low arrangement, Orlowski received $300,000.

those of Dr. Taylor and that Respondents' alleged negligence contributed to the worsening of her condition.

The trial court denied Respondents' summary judgment motion on the basis of the statute of limitations, but nonetheless granted summary judgment in favor of Respondents on the alternative basis that Orlowski was estopped from asserting the negligence claims in her second lawsuit against Dr. Creagh and Piedmont because "from the record in the prior action, it is clear that [Orlowski] sought to prove Dr. Taylor's negligence [] was entirely responsible for all of [Orlowski's] injuries and damages."

The parties filed cross-appeals, and the court of appeals affirmed as modified, holding that the trial court erred in finding Orlowski was estopped from bringing her second lawsuit but affirming summary judgment on the alternate ground that the three-year medical malpractice statute of limitations barred Orlowski's second lawsuit. In finding the statute of limitations barred Orlowski's second suit, the court of appeals relied upon *Langley v. Pierce*, 313 S.C. 401, 438 S.E.2d 242 (1993), in which this Court held the six-year statute of repose in section 15-3-545 was not tolled by the defendant's absence from South Carolina under section 15-3-30 of the South Carolina Code. This court subsequently issued a writ of certiorari to review the court of appeals' decision.[5]

## II.

"An appellate court reviews the grant of summary judgment using the same standard employed by the circuit court." *Columbia/CSA-HS Greater Columbia Healthcare Sys., LP v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 411 S.C. 557, 560, 769 S.E.2d 847, 848 (2015) (citing *Lanham v. Blue Cross & Blue Shield of S.C., Inc.,* 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002)). "Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Rule 56(c), SCRCP; *Tupper v. Dorchester Cnty.*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997)). "'Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below.'" *Id.* (quoting *Grier v. AMISUB of S.C., Inc.,* 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012)).

---

[5] In view of the absence of a challenge to the court of appeals' decision concerning the issue of estoppel, we do not reach that issue.

"A cause of action accrues at the moment when the plaintiff has a legal right to sue on it." *Brown v. Finger*, 240 S.C. 102, 111, 124 S.E.2d 781, 785 (1962) (citing *Livingston v. Sims*, 197 S.C. 458, 15 S.E.2d 770 (1941); *Bugg v. Summer*, 1 McMul. 333 (1841)). The South Carolina Code provides a three-year statute of limitations for medical malpractice causes of action. S.C. Code Ann. § 15-3-545(A) (2005). This three-year limitation period begins to run at the time the cause of action accrues or, in other words, "from the date of the treatment, omission, or operation giving rise to the cause of action" or, under the discovery rule, from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct. *Id*.; *see also Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) (citing *Dean v. Ruscon Corp*., 321 S.C. 360, 468 S.E.2d 645 (1996)).

We emphasize that the Court is presented only with a question of statutory interpretation. The parties agree that the statute of limitations applicable in a medical malpractice action is the three-year period set forth in section 15-3-545(A). The parties disagree, however, about whether and to what extent certain statutory exceptions for persons under disability operate to toll the running of that three-year limitation period.[6] Specifically, section 15-3-40 provides:

> If a person entitled to bring an action . . . is at the time the cause of action accrued either:
>
>> (1) within the age of eighteen years; or
>> (2) insane;
>
> [then] the time of the disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended:

---

[6] In this regard, we briefly note that Petitioner argues the court of appeals erred in considering the statute of limitations as an additional sustaining ground because Respondents' position on appeal was inconsistent with their position before the trial court. Specifically, Petitioner claims Respondents "conceded" this issue at trial and pointed to a specific statement of counsel during the summary judgment hearing. We do not read this statement to amount to a concession as Petitioner claims. Rather, the issue of the statute of limitations was contested throughout the summary judgment hearing.

> (a) more than five years by any such disability, except infancy; nor
>
> (b) in any case longer than one year after the disability ceases.

S.C. Code Ann. § 15-3-40 (2005).

Respondents concede Orlowski's mental incompetency satisfies the insanity standard. Therefore, the statutory construction question before us concerns only the extent to which the Legislature authorized tolling in section 15-3-545, which was enacted after section 15-3-40. *See Williams v. Town of Hilton Head Island, S.C.*, 311 S.C. 417, 421, 429 S.E.2d 802, 804 (1993) (noting that in reconciling two statutory provisions, the "Last Legislative Expression Rule" requires that the "later legislation supersedes the earlier") (citations omitted). We hold the clear language of section 15-3-545 forecloses Orlowski's reliance on section 15-3-40 to create an effective eight-year statute of limitations due to insanity in a medical malpractice action. Subsection (A) of section 15-3-545 provides for a three-year statute of limitations (and a six-year statute of repose) for medical malpractice actions "or as tolled by *this section*." (emphasis added). Subsection (D) of that section provides for tolling only in one circumstance, that is, for those "under the age of majority." The unambiguous language in section 15-3-545 constrains us to conclude that the Legislature did not intend the insanity tolling provision in section 15-3-40 to apply in a medical malpractice action.

We further find the court of appeals properly relied upon this Court's decision in *Langley* in finding that the disability tolling provisions of section 15-3-40 do not enlarge the three-year limitation period found in section 15-3-545(A). *See Langley*, 313 S.C. at 403, 438 S.E.2d at 243 (stating "[i]nclusion of the phrase '*or as tolled by this section*' in subsection (A) clearly indicates that the *only* tolling of § 15-3-545(A) intended by the legislature is that contained in subsection (D)" and "[s]ubsection (D) of 15-3-545 provides a limited tolling provision, applicable only to minors") (emphasis in original). We fully understand Petitioner's equitable argument that fairness dictates that incapacities other than minority should be read into the medical malpractice statute of limitations; however, the "'fairness of such decisions remains within the prerogative of the legislature' and not the [C]ourt," and the only issue before this Court is to discern the intent of the Legislature. *Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 147, 750 S.E.2d 65, 73 (2013) (quoting *Bell Atl. Nynex Mobile, Inc. v. Comm'r of Revenue Servs.*, 869 A.2d 611, 626 (Conn. 2005)). Moreover, we note that in the more than twenty years since this Court's decision in *Langley*, the Legislature has taken no action to alter section 15-3-545. *See Wigfall v. Tideland Utilities, Inc.*, 354 S.C. 100, 111,

580 S.E.2d 100, 105 (2003) (noting the "Legislature is presumed to be aware of this Court's interpretation of its statutes" and finding the fact that the Legislature failed to alter a statute in the four decades following a decision by this Court to be "evidence the Legislature agrees with this Court's interpretation") (citing *State v. 192 Coin-Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000)).[7]

## III.

The decision of the court of appeals is affirmed.

**AFFIRMED.**

**TOAL, C.J., PLEICONES, J. and Acting Justices James E. Moore and J. Cordell Maddox, Jr., concur.**

---

[7] Respectfully, the Legislature may wish to reexamine the availability and duration of tolling in section 15-3-545(D). We, nevertheless, note that the apparent inequities that could exist where an incompetent person seeks the protections of "insanity" tolling are not present here. This is so because of the appointment of Orlowski's conservator in March 2004. The conservator brought Orlowski's first medical malpractice lawsuit in August 2006, within the statute of limitations. There was no impediment to Orlowski timely pursuing her claim against Respondents. There is authority for the proposition that the appointment of a conservator who is vested with authority to bring an action on the ward's behalf effectively removes the disability. *See Stewart v. Robinson*, 115 F.Supp.2d 188 (D.N.H. 2000) (holding that the medical malpractice statute of limitations is tolled on the basis of insanity only until the appointment of a capable guardian who is authorized to take possession of the disabled ward's estate and bring all related actions necessary). Respondents propose the appointment of a conservator as an alternative sustaining ground. Because of our disposition, we need not reach the issue of the effect, if any, of the appointment of a conservator on the matter of tolling a statute of limitations.