# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Joey Lemmons d/b/a Rugs International, Appellant,

v.

Macedonia Water Works, Inc., Respondent.

Appellate Case No. 2017-002171

Appeal From Cherokee County
R. Keith Kelly, Circuit Court Judge

Opinion No. 5747
Submitted June 1, 2020 – Filed July 22, 2020

**AFFIRMED**

Christopher David Kennedy and N. Douglas Brannon, both of Kennedy & Brannon, P.A., of Spartanburg; and J. Falkner Wilkes, of Greenville, for Appellant.

Joseph L. Mathis and Joseph L.V. Johnson, both of Saint-Amand Thompson & Mathis, LLC, of Gaffney; and Lawrence Emile Flynn, III, of Pope Flynn, LLC, of Columbia, for Respondent.

**GEATHERS, J.:** Appellant Joey Lemmons, d/b/a Rugs International (Customer) seeks review of the circuit court's order granting summary judgment to Respondent Macedonia Water Works, Inc. (Utility) in Customer's action seeking a refund. Customer argues the circuit court erred in declining to enforce section 58-5-390 of the South Carolina Code (2015), which limits the fee a utility may charge for the

installation and maintenance of a fire sprinkler system. Utility seeks a dismissal of this appeal on the ground that Customer did not timely serve the notice of appeal. We deny the motion to dismiss and affirm the circuit court's order.

## FACTS/PROCEDURAL HISTORY

In 1999, Customer purchased a commercial building in Cherokee County, near Gaffney, for his business, Rugs International.[1] At that time, a single tap onto Utility's water main supplied the water for the building's dual-purpose service line to a potable water system and a fire sprinkler system. The eight-inch line was accompanied by a four-inch bypass line to accommodate the variance in the volume of water flow—when the flow was low, a valve within the service line's compound meter assembly closed to force all of the water to flow through the assembly's four-inch meter, and when the flow increased to a certain point, the valve opened to allow the water to flow through the assembly's eight-inch meter. This assembly increased the accuracy of metering—a low flow could not be measured accurately by a large meter; therefore, the meter assembly compounded the readings between the eight-inch meter and the four-inch bypass meter.

Utility has billed its customers a certain monthly minimum charge based primarily on the size of the customer's water meter. The minimum charge has covered water usage up to 2,000 gallons, and a volumetric charge has been added for usage exceeding 2,000 gallons. Utility's water rate schedule (effective January 1, 2001) indicates that the minimum charge for an eight-inch meter is $650. Utility determined this amount to be the actual cost of providing an eight-inch line, explaining that this amount includes the cost of increased capacity in the event that a customer "decides to make maximum use of the volumes of water that are available to him at any time." On the other hand, the monthly charge for a service line that is dedicated exclusively to a fire sprinkler system is a flat rate of $50. These accounts

---

[1] In his affidavit, Customer references one building. However, in an exhibit attached to the affidavit, specifically, a letter from Utility to Customer, Utility contends, "In the case of the Rugs International facility, there are multiple facilities, services, and buildings [that] are supplied water service from a single water meter and tap." Nonetheless, we need not resolve this discrepancy for purposes of deciding the issues on appeal.

are charged much less than other accounts because "consumption virtually never occurs . . . unless there is a fire."[2]

In 2012, Customer became aware of section 58-5-390 of the South Carolina Code, which limits the fee a utility may charge for the installation and maintenance of a fire sprinkler system.[3]  Customer believed that the statute applied to his water line and sought a refund of amounts he claimed Utility had overbilled him.  Utility took the position that it had not overbilled Customer because his building did not have a service line dedicated exclusively to a fire sprinkler system.  In March 2014, Customer added a new one-inch meter to his building to accommodate the potable

_____

[2] Jeffrey Walker, Customer's expert witness and general manager for a nearby water district that bills in the same manner that Utility bills its customers, made this statement in his August 10, 2016 letter to Utility's counsel.

[3] The legislation creating section 58-5-390 was passed in 2008.  *See* Act No. 357, 2008 S.C. Acts 3601, effective June 25, 2008.  This act was amended in 2010 to add subsection (C) to section 58-5-390.  Section 58-5-390 states,

> (A) A publicly or privately owned utility may not impose a tap fee, other fee, or a recurring maintenance fee of any nature or however described for the installation and maintenance of a fire sprinkler system that exceeds the actual costs associated with the water line *to the system*.

> (B) For purposes of this section, actual costs include direct labor, direct material, the necessity of increased capacity, and other direct charges associated with the *separate* fire sprinkler line.  The direct costs must be documented by either an invoice or work order that specifically assigns the costs to the *separate* fire sprinkler line.  Nothing in this section may be construed as requiring a utility to provide service to support a private fire protection system.

> (C) Nothing in this section shall give the commission or the regulatory staff any power to regulate or interfere with public utilities owned or operated by or on behalf of any municipality, county, or regional transportation authority as defined in Chapter 25 of this title or their agencies.

(emphases added).

water system and dedicated the eight-inch meter to the fire sprinkler system. From that point forward, Utility charged Customer $50 per month for the line dedicated to the fire sprinkler system and a monthly minimum of $20 for the one-inch line to the potable water system.

On November 24, 2014, Customer filed this action seeking a refund based on section 58-5-390. In his complaint, Customer alleged that his former compound meter had included an eight-inch meter and a two-inch meter and regular water usage had flowed through the two-inch meter. Customer also alleged that the higher volume of water had flowed through the eight-inch meter only when a fire activated the sprinkler system and only fifteen gallons had passed through the eight-inch meter since it had been installed. After filing an answer to Customer's complaint, Utility filed a motion for summary judgment, and the circuit court conducted a hearing on the motion on January 6, 2017. In its order granting summary judgment to Utility, the circuit court concluded that section 58-5-390 did not apply to Customer's former dual-purpose line because it was not dedicated exclusively to a fire sprinkler system as contemplated by the statute. The circuit court later denied Customer's Rule 59(e) motion. This appeal followed. Utility did not file a separate motion to dismiss this appeal, but rather raised the issue of appellate jurisdiction for the first time in its appellate brief.

## ISSUES ON APPEAL

1.     Does this court have appellate jurisdiction over this action?

2.     Did the circuit court err by interpreting section 58-5-390 to apply to only those lines dedicated exclusively to a fire sprinkler system?

3.     Did Customer have a separate fire sprinkler line for purposes of section 58-5-390 during the period for which he seeks a refund?

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App. 2009). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Further,

when a circuit court grants summary judgment on a question of law, such as statutory interpretation, the appellate court must review the ruling de novo. *Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019); *see Lightner v. Hampton Hall Club, Inc.*, 419 S.C. 357, 363, 798 S.E.2d 555, 558 (2017) ("An issue regarding statutory interpretation is a question of law." (quoting *Univ. of S. Cal. v. Moran*, 365 S.C. 270, 274, 617 S.E.2d 135, 137 (Ct. App. 2005))).

## LAW/ANALYSIS

## I.     Appellate Jurisdiction

Utility asserts that this appeal should be dismissed for lack of jurisdiction because Customer did not timely serve the notice of appeal.[4]  *See* Rule 203(b)(1), SCACR ("A notice of appeal shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment.  When a timely motion for judgment n.o.v. (Rule 50, SCRCP), motion to alter or amend the judgment (Rules 52 and 59, SCRCP), or a motion for a new trial (Rule 59, SCRCP) has been made, the time for appeal for all parties shall be stayed and shall run from receipt of written notice of entry of the order granting or denying such motion."); *Camp v. Camp*, 386 S.C. 571, 574–75, 689 S.E.2d 634, 636 (2010) ("Service of the notice of appeal is a 'jurisdictional requirement, and this [c]ourt has no authority to extend or expand the time in which the notice of intent to appeal must be served.'" (quoting *Mears v. Mears*, 287 S.C. 168, 169, 337 S.E.2d 206, 207 (1985))).

Specifically, Utility contends that Customer's Rule 59(e) motion did not stay the time for serving the notice of appeal because the motion was not served until after the ten-day deadline.  *See* Rule 59(e), SCRCP ("A motion to alter or amend the judgment shall be served not later than 10 days after receipt of written notice of the entry of the order."); Rule 203(b)(1), SCACR (indicating that when a timely post-trial or post-hearing motion has been made, "the time for appeal for all parties shall be stayed and shall run from receipt of written notice of entry of the order granting or denying such motion"); *see also* Rule 59(f), SCRCP ("The time for appeal for all parties shall be stayed by a *timely* motion under this Rule and shall run

---

[4] Utility actually employs the term "subject matter jurisdiction."  However, late service of the notice of appeal deprives this court of appellate jurisdiction rather than subject matter jurisdiction.  *See State v. Brown*, 358 S.C. 382, 387, 596 S.E.2d 39, 41 (2004) (holding that the failure to comply with the procedural requirements for an appeal divests a court of appellate jurisdiction but not of subject matter jurisdiction).

from the receipt of written notice of entry of the order granting or denying such motions." (emphasis added)).

Utility bases its argument on the premise that the time-stamp on the circuit court's e-mail providing the parties notice of the entry of its summary judgment order was the starting point for calculating the ten-day deadline, relying on *Wells Fargo Bank, N.A. v. Fallon Props. S.C., LLC*, 422 S.C. 211, 217, 810 S.E.2d 856, 859 (2018). In *Wells Fargo*, our supreme court discussed the thirty-day deadline for filing a notice of appeal and stated, "[A]n email providing written notice of entry of an order or judgment for purposes of Rule 203(b)(1), SCACR[,] triggers the time to appeal *as long as the email is received from the court, an attorney of record, or a party*." 422 S.C. at 217, 810 S.E.2d at 859. The court explained that the notice of entry of the order being appealed does not have to be formally served by the court or an opposing party but rather "[a]ll that is required to trigger the time to appeal is that the parties *receive* such notice." *Id.* at 215–16, 810 S.E.2d at 858.

Notably, the *date* the appellants in *Wells Fargo* received the e-mail from the circuit court's administrative assistant was not in dispute. Rather, the appellants argued that their receipt of notice by e-mail rather than by regular mail or hand delivery could not trigger the time within which to file the notice of appeal. *Id.* at 215, 810 S.E.2d at 858. However, in the instant case, Customer challenges the date of receipt of the e-mail because there was no record created before the circuit court as to that critical date.

Customer maintains that the time-stamp on the e-mail is not always the starting point because the time-stamp does not conclusively determine the date a party receives the e-mail and the date of receipt determines the starting point for calculating the ten-day deadline. *See* Rule 59(e), SCRCP ("A motion to alter or amend the judgment shall be served not later than 10 days after *receipt* of written notice of the entry of the order." (emphasis added)). Customer credibly asserts, "Emails, although commonly used, are nonetheless subject to unpredictable and unexplainable travels[ and] delayed and sometimes failed delivery, just as are letters mailed through the postal system." *See* S.C. Code Ann. § 26-6-150(B) (2007) ("Unless otherwise agreed between a sender and the recipient, an electronic record is received when it: (1) enters an information processing system that the recipient has designated or uses for the purpose of receiving electronic records or information of the type sent and from which the recipient is able to retrieve the electronic record; *and* (2) is in a form capable of being processed by that system." (emphasis added));[5]

---

[5] Section 26-6-150 was enacted in 2004. Act No. 279, 2004 S.C. Acts 2804.

S.C. Code Ann. § 26-6-150(G) (2007) ("If a person is aware that an electronic record purportedly sent pursuant to subsection (A), or purportedly received pursuant to subsection (B), was *not actually sent or received, the legal effect of the sending or receipt is determined by other applicable law*." (emphasis added)).

Customer also maintains that when the circuit court was considering his Rule 59(e) motion, he did not have an opportunity to submit evidence of the date he actually received written notice of the entry of the summary judgment order because at that time, Utility presented neither an argument that the Rule 59(e) motion was late nor the AIS document on which it now relies to show when the circuit court's e-mail was sent.[6]

The question of whether the e-mail's time-stamp can be presumed to be the date of a party's receipt of the notice has not yet been addressed by our appellate courts. In the absence of our supreme court's pronouncement of such a presumption, this court must look to the Record on Appeal to determine the date of receipt of the circuit court's e-mail notice according to the standards of section 26-6-150(B). *See* § 26-6-150(B) ("Unless otherwise agreed between a sender and the recipient, an electronic record is received when it: (1) *enters* an information processing system that the recipient has designated or uses for the purpose of receiving electronic records or information of the type sent and from which the recipient is able to retrieve the electronic record; *and* (2) is in a form capable of being processed by that system." (emphases added)).

Because Utility failed to present to the circuit court its argument that Customer's Rule 59(e) motion was late, the parties did not create a record establishing either the date that the circuit court's e-mail notice entered counsel's e-mail server or whether the e-mail notice was "in a form capable of being processed by" counsel's server. Therefore, we reject Utility's argument that Customer did not timely invoke this court's appellate jurisdiction.

## II.    Interpretation of section 58-5-390

Customer maintains the circuit court erred by interpreting section 58-5-390 to apply to only those lines dedicated exclusively to a fire sprinkler system. He argues

---

[6] In its brief, Utility asserts that the order granting summary judgment was sent to the attorneys of record via the Attorney Information System (AIS) at 12:00 p.m. on March 23, 2017. Utility also asserts that Customer served his Rule 59(e) motion on Utility via AIS on April 4, 2017.

that the legislative intent underlying section 58-5-390 was for the statute to apply to all fire sprinkler systems "without exception, even if the tap supplies other water uses."  We disagree.

Section 58-5-390 states,

> (A) A publicly or privately owned utility may not impose a tap fee, other fee, or a recurring maintenance fee of any nature or however described for the installation and maintenance of a fire sprinkler system that exceeds the actual costs associated with the water line *to the system*.

> (B) For purposes of this section, actual costs include direct labor, direct material, the necessity of increased capacity, and other direct charges associated with the *separate* fire sprinkler line.  The direct costs *must* be documented by either an invoice or work order that *specifically assigns* the costs to the *separate* fire sprinkler line.  Nothing in this section may be construed as requiring a utility to provide service to support a private fire protection system.

> (C) Nothing in this section shall give the commission or the regulatory staff any power to regulate or interfere with public utilities owned or operated by or on behalf of any municipality, county, or regional transportation authority as defined in Chapter 25 of this title or their agencies.

(emphases added).

"In interpreting statutes, the [c]ourt looks to the plain meaning of the statute and the intent of the Legislature."  *Gay v. Ariail*, 381 S.C. 341, 344, 673 S.E.2d 418, 420 (2009).  "All rules of statutory construction are subservient to the maxim that legislative intent must prevail if it can be reasonably discovered in the language used."  *Id.*  Therefore, "[i]n interpreting a statute, the court will give words their plain and ordinary meaning[] and will not resort to forced construction that would limit or expand the statute."  *State v. Johnson*, 396 S.C. 182, 188, 720 S.E.2d 516, 520 (Ct. App. 2011).

> Under the plain meaning rule, it is not the province of the court to change the meaning of a clear and unambiguous

statute. Where the statute's language is plain, unambiguous,[7] and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning.

*S.C. Energy Users Comm. v. S.C. Pub. Serv. Comm'n*, 388 S.C. 486, 491, 697 S.E.2d 587, 590 (2010) (citation omitted). Further, "[t]he intention of the legislature must be gleaned from the entire section and not simply clauses taken out of context." *Singletary v. S.C. Dep't of Educ.*, 316 S.C. 153, 162, 447 S.E.2d 231, 236 (Ct. App. 1994).

First, the plain language of the statute as a whole reflects the legislature's intent to isolate the costs "associated with" a line to a fire sprinkler system to a separate line dedicated to only that system. Subsection (A) limits the utility's fee to "the actual costs associated with the water line to the system." Next, subsection (B) fleshes out the terms "actual costs" and "associated with" by not only itemizing those costs but also requiring utilities to document costs and to do so in a manner that assigns them to a line dedicated solely to the fire sprinkler system: "The direct costs *must* be documented by either an invoice or work order that *specifically assigns* the costs to the *separate* fire sprinkler line." § 58-5-390(B) (emphases added); *see Collins v. Doe*, 352 S.C. 462, 470, 574 S.E.2d 739, 743 (2002) ("[U]se of words such as 'shall' or 'must' indicates the legislature's intent to enact a mandatory requirement.").

The use of this mandatory language rules out the possibility that the legislature simply left unaddressed the question of how costs could be calculated on dual-purpose lines to existing fire sprinkler systems, which would have created a latent ambiguity in the statute. *See Barth v. Barth*, 293 S.C. 305, 309, 360 S.E.2d 309, 311 (1987) ("The ascertainment of intention may be the least of a judge's troubles in ascribing meaning to a statute. 'The fact is . . . that the difficulties of so-called interpretation arise when the legislature has had no meaning at all; when the question [that] is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point [that] was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.'" (quoting Benjamin N. Cardozo, *The Nature of the Judicial Process* 14–14 (Yale University Press 1921))).

---

[7] "If a statute is susceptible to two reasonable interpretations, it is ambiguous." *S.C. Dep't of Soc. Servs. v. Lisa C.*, 380 S.C. 406, 416, 669 S.E.2d 647, 652 (Ct. App. 2008).

Nonetheless, even if the statute may be reasonably interpreted in more than one way so as to render it ambiguous, applying the rules of statutory construction to section 58-5-390 underscores the reality that it is not feasible to determine all of the "actual" costs associated with a line to a fire sprinkler system if the line is also used for other purposes. The only way to stay true to the requirement to charge only the actual costs is to isolate those costs through the separation of the line to the fire sprinkler system from any water line serving other building systems. If the legislature had deemed it sufficient for a utility to extrapolate the costs of a water line to a fire sprinkler system from the costs of a dual-purpose line, it would not have included the word "actual" in subsections (A) and (B) or the word "separate" in subsection (B). *See CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) ("[W]e read the statute *as a whole* and in a manner consonant and in harmony with its purpose." (emphasis added)); *id.* ("In that vein, we must read the statute so 'that no *word*, clause, sentence, provision or part shall be rendered *surplusage, or superfluous*,' for '[t]he General Assembly obviously intended [the statute] to have some efficacy, *or the legislature would not have enacted it into law*.'" (emphases added) (citation omitted) (alterations in original) (quoting *State v. Sweat*, 379 S.C. 367, 377, 382, 665 S.E.2d 645, 651, 654 (Ct. App. 2008) ("*Sweat I*"), *aff'd as modified on other grounds*, 386 S.C. 339, 688 S.E.2d 569 (2010) ("*Sweat II*"))); *Sweat I*, 379 S.C. at 376, 665 S.E.2d at 650 ("A statute as a whole must receive a *practical*, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." (emphasis added)); *Sweat II*, 386 S.C. at 351, 688 S.E.2d at 575 ("Courts will reject a statutory interpretation [that] would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention."); *id.* ("Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." (quoting *Bennett v. Sullivan's Island Bd. of Adjustment*, 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct. App. 1993))).

Customer relies on the language stating the statute's purpose, i.e., "[I]t is the purpose of this act to create meaningful incentives for the installation of fire sprinkler systems,"[8] to support his argument that the legislature intended for the statute to apply to all fire sprinkler systems. However, the statute's purpose contemplates the installation of new fire sprinkler systems into buildings that did not already have them on the statute's effective date and provides fair notice to utilities that they must document actual costs only by installing a separate line dedicated exclusively to a fire sprinkler system. *See CFRE*, 395 S.C. at 74, 716 S.E.2d at 881 ("[W]e read the

---

[8] Act No. 357, Preamble, 2008 S.C. Acts 3602, effective June 25, 2008.

statute as a whole and in a manner *consonant and in harmony with its purpose*." (emphasis added)); *Sweat I*, 379 S.C. at 376, 665 S.E.2d at 650 ("A statute as a whole must receive a practical, reasonable, and fair interpretation *consonant with the purpose, design, and policy of the lawmakers*." (emphasis added)); *cf. Gatewood v. S.C. Dep't of Corr.*, 416 S.C. 304, 321, 785 S.E.2d 600, 609 (Ct. App. 2016) ("[A]bsent a specific provision or clear legislative intent to the contrary, statutes are to be construed prospectively rather than retroactively, unless the statute is remedial or procedural in nature." (quoting *Edwards v. State Law Enf't Div.*, 395 S.C. 571, 579, 720 S.E.2d 462, 466 (2011))).[9]  The owners of buildings with fire sprinkler systems already in place when section 58-5-390 was enacted did not need the incentive created by the statute.  Therefore, the statute's incentive-creating purpose was not fulfilled by existing fire sprinkler systems.  Hence, we see no incongruity in excluding from the class of the statute's beneficiaries those owners of fire sprinkler systems that were already existing on the statute's effective date and were served by a dual-purpose line.

Further, we note that Act No. 357 also created or amended several other statutes to serve the purpose of creating incentives for installing fire sprinkler systems.  For example, section 2 of the Act added section 12-6-3622 to the South Carolina Code.  Act No. 357, 2008 S.C. Acts 3603–04; S.C. Code Ann. § 12-6-3622 (2014 & Supp. 2019).  Section 12-6-3622 allows a property tax credit, under certain conditions, for the installation of a fire sprinkler system in a business or residence.  Further, section 3 of the Act amended section 12-37-3130 of the South Carolina Code (2014) to exclude the voluntary installation of a fire sprinkler system from the definition of "additions" or "improvements" in determining the fair market value of real property for tax purposes, provided the utility and function of the structure remains unchanged.  Act No. 357, 2008 S.C. Acts 3604–05.  Moreover, section 5 of the Act amended section 12-37-220 of the South Carolina Code (2014 & Supp. 2019) to add a property tax exemption for fire sprinkler system equipment until the building in which the system is installed undergoes an "assessable transfer of interest."  Act No. 357, 2008 S.C. Acts 3605.  In light of these additional incentives, we do not believe that limiting the fire sprinkler systems governed by section 58-5-390 to those that have a separate connection to a utility's main significantly detracts from the Act's purpose of creating incentives for the installation of these systems.

---

[9] *Id.* ("A statute is remedial whe[n] it creates new remedies for existing rights unless it violates a contractual obligation, creates a new right, or divests a vested right." (quoting *Se. Site Prep, LLC v. Atl. Coast Builders & Contractors, LLC*, 394 S.C. 97, 106, 713 S.E.2d 650, 655 (Ct. App. 2011))); *id.* ("[A] statute that limits a right is generally not procedural." (quoting *Edwards*, 395 S.C. at 580, 720 S.E.2d at 467)).

Based on the foregoing, we affirm the circuit court's conclusion that section 58-5-390 applies to only those lines dedicated exclusively to a fire sprinkler system.

## III.    Separate Line

Customer argues that he presented at least a scintilla of evidence that his building had a separate fire sprinkler line for purposes of section 58-8-390 before he added his one-inch line and, therefore, summary judgment was inappropriate. *See Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009) ("[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment."). Customer contends that the circuit court improperly weighed the evidence because "[a] simple examination of the two meters along with [Customer's] testimony was more than sufficient to require the court to deny summary judgment in this case." *See S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct. App. 2001) ("At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact."). Customer also argues that the circuit court failed to view the evidence in the light most favorable to him. *See Hendricks v. Clemson Univ.*, 353 S.C. 449, 455–56, 578 S.E.2d 711, 714 (2003) ("In determining whether any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party."). We disagree.

"[A] scintilla of evidence is any material evidence which, taken as true, would tend to establish the issue in the mind of a *reasonable* juror." *Crosby v. Seaboard Air Line Ry.*, 81 S.C. 24, 31, 61 S.E. 1064, 1067 (1908) (emphasis added). "[A]ny evidence, even a scintilla, that is useful to withstand a summary judgment motion must meet the prerequisite of being probative." *Bass v. Gopal, Inc.*, 384 S.C. 238, 246 n.6, 680 S.E.2d 917, 921 n.6 (Ct. App. 2009), *aff'd*, 395 S.C. 129, 716 S.E.2d 910 (2011). The circuit court "is not required to single out some one morsel of evidence and attach to it great significance when patently the evidence is introduced solely in a vain attempt to create an issue of fact that is not genuine." *Main v. Corley*, 281 S.C. 525, 527, 316 S.E.2d 406, 407 (1984). "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a *genuine* issue of fact remaining for trial." *Sims v. Amisub of S.C., Inc.*, 408 S.C. 202, 208, 758 S.E.2d 187, 190–91 (Ct. App. 2014), *aff'd*, 414 S.C. 109, 777 S.E.2d 379 (2015) (emphasis added) (quoting *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct. App. 2004)).

Here, Customer asserts that an examination of his meter assembly shows two separate lines running to two separate meters. However, in determining whether a factual issue is genuine, a true understanding of certain evidence requires the court to move beyond a cursory examination to acknowledge existing expertise on the matter. *See Crosby*, 81 S.C. at 31, 61 S.E. at 1067 ("[A] scintilla of evidence is any material evidence which, taken as true, would tend to establish the issue in the mind of a *reasonable* juror." (emphasis added)); *Main*, 281 S.C. at 527, 316 S.E.2d at 407 (stating that the circuit court "is not required to single out some one morsel of evidence and attach to it great significance when patently the evidence is introduced solely in a vain attempt to create an issue of fact that is not genuine"). Further, viewing the evidence in the light most favorable to the party opposing summary judgment does not change this reality.

Turning to the opinions of both parties' experts in the present case, a reasonable juror could not escape the conclusion that during the period for which Customer seeks a refund, the building did not have a separate line dedicated to the fire sprinkler system. After examining these opinions, we agree with Utility's assessment that during the period for which Customer seeks a refund, the eight-inch line was not limited to fire service only as it served the entire building and water capacity was available to Customer at any time and for any purpose. Utility's engineering expert, William H. Bingham, Jr., prepared a report to formalize the findings he made during his site visit on November 1, 2013, and to provide the basis for his opinion regarding the service to the Rugs International facility.[10] Bingham described Customer's water meter as an eight-inch compound water meter with a four-inch bypass meter. Bingham explained the nature of this meter in the following manner:

> Since this style of water meter is used on both separate fire lines and dual purpose service lines, a determination of the type of water service for a given customer cannot be made *simply by observing* whether the meter assembly is comprised of a single meter or a compound meter. The use of two meters in the compound meter assembly is purely for improvement in the measurement of flow in the system and has no bearing on whether the water is used for fire sprinklers or other water consumption. *Compound*

---

[10] Mr. Bingham conducted a subsequent site visit on May 12, 2015, to collect additional information needed for his report.

*meters on dual-purpose service lines have no capability to differentiate between the volume of water consumed by the commercial usage of a facility from the volume of water consumed by the fire sprinkler system.* There can be no assumption that the smaller meter reads the commercial water consumption and the larger diameter meter only reads the fire sprinkler consumption.

(emphases added).

Additionally, in his August 10, 2016 letter to Utility's counsel, Customer's own expert, Jeffrey Walker, General Manager for the Inman-Campobello Water District (ICWD), gave the following opinion after reviewing the report of Utility's expert:

[S]ince all of the water for this customer flowed through this meter assembly and therefore, this was not a connection dedicated to fire protection only, the ICWD would not consider this a private fire protection line. At the ICWD, a private fire protection line is solely dedicated to fire protection and *consumption virtually never occurs with these types of connections, unless there is a fire. For this reason, accounts of this type are charged much less than accounts that are not solely dedicated to fire protection.*

Therefore, given the same meter and the same or a similar industry, the ICWD would bill the customer the minimum bill for an 8-inch meter plus any consumption that exceeded the amount that is included in the minimum charge. Even though the meter assembly is comprised of two meters, it is still considered an 8-inch meter. The smaller meter is in place to capture lower flows that the 8-inch meter cannot detect.

(emphasis added).[11]

---

[11] Walker acknowledged that the ICWD bills in the same manner that Utility bills its customers.

Based on the foregoing, the circuit court properly granted summary judgment to Utility. *See* Rule 56(c), SCRCP (providing that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."); *Wright*, 426 S.C. at 211, 826 S.E.2d at 290 ("The purpose of summary judgment is to expedite disposition of cases [that] do not require the services of a fact finder." (quoting *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001))).

## CONCLUSION

Accordingly, we deny the motion to dismiss and affirm the circuit court's order.

**AFFIRMED.**[12]

**LOCKEMY, C.J., and HEWITT, J., concur.**

---

[12] We decide this case without oral argument pursuant to Rule 215, SCACR.